Charles M. Walker
U.S. Bankruptcy Judge
Dated: 11/23/2022



UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| IN RE: | ) |
| | ) Case No: 3:22-bk-01593 |
| Julie Ann Buhler, | ) Chapter 11 |
| | ) Honorable Charles M. Walker |
| Debtor. | ) |
| | ) |
| | ) |
| Julie Ann Buhler, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. Proc. No: 3:22-ap-90090 |
| | ) |
| Ellen U. Davis, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM OPINION

Julie Buhler and Dick and Ellen Davis were neighbors for twenty-six years. Mr. and Mrs. Davis lived at 107 McGavock Pike for that entire time. Ms. Buhler lived for a while at 109 McGavock Pike, and then moved to 105 McGavock Pike.

On October 11, 2016, Ms. Buhler and Mr. and Mrs. Davis entered into an installment land contract and ("Contract") and Promissory Notice ("Note"). According to the Contract, Ms. Buhler received immediate possession of 107 McGavock Pike ("the Property") after tendering a $30,000 down payment and agreeing to pay a portion of the purchase price in installments over time. On December 31, 2019, the maturity date, a balloon payment of $330,000 (Transcript P. 68 L. 231) was due, at which time a closing would be held and Ms. Buhler would become owner of the Property.

1

After taking possession of the Property, Ms. Buhler moved into the garage apartment on the Property, and began operating it, as well as 105 McGavock, as short-term vacation rental properties.

Ms. Buhler made her monthly payments on the Contract for November 2016 through December 2019.[1] Prior to the 2019 maturity date, Ms. Buhler informed Mr. Davis that she would not be able to make the balloon payment and the parties entered into an extension that pushed the maturity date back one year to December 31, 2020.

Once again, Ms. Buhler made her monthly payments up to and including November 2020. Once again, Ms. Buhler could not make the balloon payment due on the maturity date and, once again, the parties agreed on an extension – this time to December 31, 2021.

Meanwhile, Mr. Davis was diagnosed with cancer and battled the disease throughout 2021. After failing to make the December 2021 monthly payment (Transcript at P. 55 L. 2586-2598), Ms. Buhler reached out to inform Mr. Davis that she would not be able to make the balloon payment due on December 31, 2021. Mr. Davis was not willing to extend the Contract again given his health condition.

Ms. Buhler made several attempts to extend the Contract without Mr. Davis' agreement. All to no avail. For example, after finding out Mr. Davis would not extend the Contract, she messaged him that she had obtained financing and would be able to close the first week of January but actually did not have a legitimate loan commitment to back up that statement (Transcript at P. 45 L. 2110-2290 ).

---

[1] There were several instances wherein Ms. Buhler missed payments. On October 11, 2018, Mr. Davis sent Ms. Buhler a default notice stating that payment of the principal and all interest due under the note or surrender of the property by 11/1/18 were her two options.

2

Early in January 2022, Ms. Buhler attempted to extend the Contract again by offering Mr. and Mrs. Davis a partial payment of $136,000 from the Covid relief money obtained by her business (Transcript at P. 57 L. 2679 – 2692).

She tried again when, on January 24, 2022, the Davis' attorney sent her a Default Letter (Exhibit 2015) stating that she had defaulted under the Contract and had until February 25, 2022 to vacate the Property or face a detainer action. Instead of vacating the Property, Ms. Buhler wired what amounted to two-months of payments into Mr. Davis' rental account without his knowledge or consent (Transcript P. 26 L. 1218-1224).

Ms. Buhler continued to plead with Mr. Davis via text message and promised various payment solutions, but six days after the Default Letter was sent, Mr. Davis passed away.

On February 1, 2022, the Davis' attorney returned the wired money via letter indicating the funds were transferred to Mr. Davis' account without his knowledge or authorization. (Exhibit 2016). Three days later, Ms. Buhler filed a Complaint to Set Aside Transfer/And Or Notice of Default ("Complaint") against Mr. and Mrs. Davis in the Chancery Court for Davidson County, Tennessee, alleging denial of her rights under the Tennessee Home Loan Protection Act.[2] The Complaint sought relief such that "the Defendants notice of default on real property located at 107 McGavock Pike, Nashville, Tennessee 37204 and that the Plaintiffs (sic) be permitted to pay off and received the deed to said property as prayed for herein." (Exhibit 2017). The Complaint also contained several attachments regarding the agreements of the parties over the years with regard to the Property, as well as a copy of the January 24, 2022 letter from the Davis' counsel, referred to in the Complaint as a "notice of default." In addition, the Verified Complaint provided for a deposit in the amount of the required balloon payment, as well as

---

[2] TCA 45-20-104

reasonable attorneys' fees, to be deposited in the Davis' attorney's escrow account or the Registry of the Court and Master of the Court. *Id* at 3.

Although the Chancery Action was filed on February 4, 2022, Ms. Buhler did not serve Mrs. Davis with the Complaint until February 28, 2022. On February 17, 2022, unaware of the Chancery Court suit, Mrs. Davis filed a detainer action in General Sessions Court in Davidson County seeking to evict Ms. Buhler from the Property. After entry of judgment in her favor on March 17, 2022, Ms. Buhler timely filed an appeal.

Meanwhile in the Chancery Court suit, Ms. Buhler appeared at the first hearing on or around March 2022. Prior to the hearing, Ms. Buhler obtained a cashier's check in her name in the amount of $350,000[3] and brought it to the hearing. However, she did not tender the check to Mrs. Davis' attorney or to the registry of the court. At the second hearing, Ms. Buhler again appeared with certified funds and again left with those funds after obtaining a continuance so that she could amend the complaint.

Five days later, Ms. Buhler filed for relief under the Chapter 11 of the Code on May 18, 2022 (Exhibit 2021).

<u>Plaintiff's Argument</u>

Ms. Buhler asserts that the Contract is an executory contract for the purchase of property, that was not lawfully terminated pre-petition and is, therefore, assumable in bankruptcy. Her position is that she acquired the Property through a seller financing arrangement with Mr. and Mrs. Davis, and was prevented from consummating the sale by their refusal to accept her tender of funds after the maturity date of the Contract. The Chancery Court suit was filed to protect her

---

[3] Ms. Buhler testified that she obtained the check from a friend Charles Williamson, who also testified to that fact. Transcript at P. 62 L. 2959 – 2973; P. 69 L. 3276 – 3308.

4

rights under an existing executory contract and, therefore, she maintains that her right to cure and assume was preserved for the bankruptcy estate.

## Defendant's Position

Mrs. Davis' position is much simpler: Ms. Buhler did not make the balloon payment due on the maturity date, therefore the Contract terminated and possession of the property reverts back to her.

## Installment Land Sale Contracts and Executory Contracts

Tennessee law identifies land sale contracts as legitimate instruments for the purchase of real property. *In re Carson*, 286 B.R. 645 (Bankr. E.D. Tenn. 2002). In legal contemplation, installment land sale contracts are as lawful as deeds of trust and involve no deception or unfairness. *Boyd v. Berrier*, 2001 WL 840297, at *3 (Tenn. App. July 26, 2001). In a court of equity, the offending feature of land sale contracts lies in the available remedy of forfeiture. However, forfeitures pursuant to contract are not illegal per se, and are enforceable unless contrary to equity and justice. See, *Hooton v. Nacarato GMC Truck Inc.*, 772 S.W.2d 41 (Tenn.App.1989). See also, *Guiliano v. Cleo*, 995 S.W.2d 88 (Tenn.1999). Forfeiture permits the seller to treat the contract as terminated upon the offending action by the buyer, retain all payments, and retake possession of the property without the necessity of legal action. *In re Harris*, 2007 WL 1306483 (Bankr. E.D. Tenn. May 2, 2007).

The Code does not define executory contracts, but courts generally identify an executory contract as "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Countryman, Executory Contracts in Bankruptcy: Part 1, 57 Minn. L.R. 439, 460 (1973). Although federal law defines

the term "executory contract," as one under which both sides having remaining obligations the nonperformance of which by one party would excuse performance by the other, it is state law that determines the legal consequences of one party's failure to perform. *Carson*, 286 B.R. at 649 (citations omitted).

In Tennessee courts, as well as other Sixth Circuit courts, installment land sale contracts are identified as executory contracts because the agreement imposes an obligation on the buyer to make payments in a particular fashion, while the seller is required to tender title upon completion of those payments. *Cooper v. First Citizens Bank* (*In re Jones*), 186 B.R. 71 (Bankr. W.D. Ky. 1995) citing *Terrell v. Albaugh* (*In re Terrell*), 892 F. 2d 469 (6th Cir. 1989); *In re Willingham*, 139 B.R. 670 (Bankr. N.D. Ohio 1991). See, e.g., *In re Columbia Gas Sys., Inc.*, 50 F. 3d 233 (3d Cir. 1995). However, unless both parties have unperformed obligations amounting to a breach when the petition is filed, the contract is not executory for the purposes of § 365. *Enter. Energy Corp. v. United States* (*In re Columbia Gas Sys., Inc.*), 50 F. 3d 233, 239 (3d Cir. 1995); See also *Matter of C & S Grain Co.*, 47 F. 3d 233, 237 (7th Cir. 1995) ("For the purpose of the Bankruptcy Code, an executory contract is one in which the obligations of each party remain substantially unperformed. Consequently, when the debtor . . . has breached the contract pre-petition with the result that the other party has no further duty to perform, . . . the contract is no longer executory for purposes of section 365.").

<u>Anticipatory Repudiation</u>

A party to a contract can take certain actions or make certain statements that indicate repudiation. Such a repudiation can occur when a party "commit[s] a voluntary act which renders the party unable or apparently unable to perform the contract," *Wright v. Wright*, 832 S.W.2d 542, 545 (Tenn.Ct.App.1991); see Restatement (Second) of Contracts § 250 (1979), or when "the

6

Case 3:22-ap-90090    Doc 37    Filed 11/23/22    Entered 11/23/22 14:17:52    Desc Main
Document      Page 6 of 11

words and conduct of the contracting party ... amount to a total and unqualified refusal to perform the contract." *Wright*, 832 S.W.2d at 545; see *Ky. Home Mut. Life Ins. Co. v. Rogers*, 196 Tenn. 641, 270 S.W.2d 188, 194–95 (1954); *Brady v. Oliver*, 125 Tenn. 595, 147 S.W. 1135, 1139 (Tenn.1911); *Wilkins v. Third Nat. Bank in Nashville*, 884 S.W.2d 758, 761 (Tenn.Ct.App.1994). An indication that more negotiations are sought is not a total and unqualified refusal to perform. See *Palmiero v. Spada Distr. Co.*, 217 F.2d 561, 565 (9th Cir.1954) (holding that "an anticipatory breach of contract is not established by a negative attitude or one which indicates that more negotiations are sought").

When a repudiation occurs before the time that a contract requires a party to perform, the repudiating party has committed an "anticipatory repudiation" or an "anticipatory breach" of the contract. See *Church of Christ Home for Aged v. Nashville Trust Co.,* 184 Tenn. 629, 202 S.W.2d 178, 183 (1947); 23 Samuel Williston, Treatise on the Law of Contracts § 63.29 (Richard A. Lord ed., 4th ed.2002). Believing that another party has committed an anticipatory breach of a contract, the non-breaching party may elect to take one of three courses of action: (1) rescind the contract and pursue remedies based on a rescission; (2) treat the repudiation as an immediate breach by bringing suit or changing position in some way; or (3) await the time for performance of the contract and bring suit after that time has arrived. *Williston on Contracts* at § 63.33; see *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 371 Ill.App.3d 1019, 309 Ill.Dec. 686, 864 N.E.2d 927, 940 (Ill.App.Ct.2007).

If the non-breaching party elects to sue on the anticipatory breach, then his anticipatory breach cause of action, if proven, entitles the non-breaching party to a remedy for an actual breach of the contract, as if the anticipatory breach had occurred after the time for performance had arrived. See, e.g., *Roehm v. Horst*, 178 U.S. 1, 9, 20 S.Ct. 780, 44 L.Ed. 953 (1900); *Tower*

7

*Investors*, 309 Ill.Dec. 686, 864 N.E.2d at 940; *Bourke v. Western Bus. Prods.*, 120 P.3d 876, 883 (Okla.Civ.App.2005); *Weitzel v. Sioux Valley Heart Partners*, 714 N.W.2d 884, 894 (S.D.2006). Under this logic, courts will sometimes refer to an "anticipatory breach" of contract as a "constructive breach." See Black's Law Dictionary 182 (7th ed.1999). *UT Med. Group, Inc. v. Vogt*, 235 S.W.3d 110, 120 (Tenn. 2007). As previously discussed, in the case of an installment land sale contract, an available remedy for breach is forfeiture.

## Discussion

Although land sale contracts are commonly used in transactions involving nominal down payments for the purchase of property, here it appears that the down payment was not the issue. Ms. Buhler initially faced other obstacles to her financing the Property, namely a poor credit score and significant federal and state tax debt. Mr. Davis offered Ms. Buhler an installment land contract for the purchase of the Property as a solution to her financing issues. Ms. Buhler, an experienced businesswoman, as well as the owner of both commercial and residential properties, had the agreement reviewed by her attorney and did not insist on changes to the agreement as suggested by her legal counsel (Transcript at P. 10 L. 441-468; P. 43 L. 2048 - 2094). Instead, she signed the agreement as presented by Mr. Davis.

Per the agreement, in the event of default all payments made would be retained by the sellers and forfeiture was the remedy for any breach on her part.(Exhibit 2005, P 3 ¶7) Ms. Buhler testified to no deceptive or unfair act by any defendant; rather, she attributed her failure to timely make the balloon payment on her inability to obtain financing. Moreover, she received significantly more rental income from the property than she paid to the Davis'.

The controlling facts here are clear and not credibly controverted. First, Ms. Buhler did not make the monthly payment due on December 1, 2021. Second, prior to the maturity date, Ms.

Buhler indicated to Mr. Davis that she would not be able to make the balloon payment due on the maturity date per the agreement. Third, Ms. Buhler failed to make the balloon payment due on the maturity date per the agreement. All three of these instances result in a breach.

When Ms. Buhler failed to make the December 2021 monthly payment, Mr. and Mrs. Davis could have issued a default notice permitting Ms. Buhler to cure the default within 10 days or face forfeiture.

When Ms. Buhler indicated that she would not be able to make the balloon payment on the maturity date, she repudiated the contract and the Davis' available remedies included forfeiture. Once Ms. Buhler made that statement, Mr. and Mrs. Davis were not required to give Ms. Buhler a default notice. They were within their rights to let the agreement expire and retain the property through forfeiture without any formal legal action.

When Ms. Buhler failed to make the balloon payment on the maturity date, the Contract terminated, and the available remedy of forfeiture was lawful at that time.

Ms. Buhler argues that her failure to consummate the Contract with payment in full on the maturity date was a default, triggering the requirement for service of a default notice. *Id.* This argument is not credible in that the Contract terminated upon her failure to consummate. Moreover, even if a default notice was required, Mr. and Mrs. Davis served Ms. Buhler with notice of default on January 24, 2021. Six days later, Mr. Davis passed away. Four days after that, Ms. Buhler filed suit in the Chancery Court of Davidson County, in an apparent attempt to stall the expiration of the any cure provision that may have been in force and effect from the default notice. However, the filing of the suit did not act to toll any default cure deadline that may have been in effect. Although the complaint purported to be filed with a good-faith deposit into the Court's registry of the full cure amount, no such deposit occurred despite Ms. Buhler

having funds in hand to do so. Therefore, even if there was a default requiring notice and a cure opportunity, Ms. Buhler was again wholly unsuccessful in completing her part of the deal: the tender of funds to constitute the balloon payment.

The one fact that is consistent throughout the history of this transaction between the parties is that despite every opportunity to complete the agreement and close on the property, Ms. Buhler failed. In fact, Ms. Buhler never acted to actually consummate the sale despite the apparent ability to do so. Although throughout her testimony she insisted that she just wanted to close on the Property, her actions were in direct contravention of that supposed goal. Ms. Buhler's circumstances and actions point to another agenda. Looming over this transaction is the substantial state and federal tax debt – specifically, the hundreds of thousands of dollars owed the IRS. That fact rendered it impossible for Ms. Buhler to take title to the Property without the IRS swooping in to lien and possibly confiscate the asset. The IRS already held a lien on 105 McGavock (ECF 1, P. 22).

No, Ms. Buhler never once acted to complete the Contract with Mr. and Mrs. Davis. From the Contract extensions, to the missed payments, to the anticipatory repudiation, to the dangling of checks to evidence her ability to pay only to retrieve and retain those funds, Ms. Buhler's actions never matched her testimony. She had no intention of closing on the Contract. Her actions did, however, support the Davis' actions, and now Mrs. Davis' actions, in seeking forfeiture of the property.

## Motion for Relief from Stay

Mrs. Davis seeks relief from the automatic stay in order to pursue her remedies given the termination of the Contract.

10

### Objection to Debtor's Claimed Homestead Exemption

Mrs. Davis has objected to the Debtor's claimed homestead exemption in that the Ms. Buhler does not own the Property.

### Conclusion

For the reasons stated above, the Court finds in favor of the Defendant, Ellen Davis, as to the adversary complaint. Pursuant to paragraph 8.5 of the Contract, the Court awards the Defendant attorney's fees to be determined pursuant to the provisions of the Order entered simultaneously herein. The motion for relief is GRANTED and the objection to the homestead exemption in the Property is SUSTAINED. A separate order will issue.

*This opinion was signed and entered electronically as indicated at the top of the first page.*

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.